# JOHN GRAY *et al.*
### *v.*
# MINARD L. WATERMAN.

1. EVIDENCE — *copy of minutes of a resurvey of road.* A copy of the field notes of a resurvey of a public highway made by a county surveyor, but not under competent authority, and filed with a town-clerk, the copy of which is made and certified by him, is not evidence to establish the location of a public road. Nor are such notes of a survey made by the same person after he has ceased to be the county surveyor.

2. TRESPASS — *damages — evidence.* Where defendants are sued for a trespass, it is error to admit evidence of a subsequent trespass committed by a part of the defendants, but in which the others did not participate, as it would be wrong to render those not engaged in the latter trespass liable for the damages occasioned thereby.

3. SAME— *evidence, mitigation of exemplary damages.* It is error to reject evidence that defendants, in removing a fence from what was supposed to be a public highway, acted under a resolution adopted at a town-meeting. Such evidence is not admissible as a bar to the action, nor in mitigation of the actual damages sustained, but as tending to repel malice and thus to mitigate punitive damages.

4. SAME— *damages— their extent.* In an action of trespass for removing a fence, the plaintiff, if he recover, may have the damage growing out of its removal, and also for the loss of crops growing at the time, which resulted from the perpetration of the unlawful act. In such a case the wrong-doer is responsible for all of the consequences directly resulting from the wrongful act.

APPEAL from the Circuit Court of Kendall county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was an action of trespass *quare clausum fregit,* brought by Minard L. Waterman, in the Grundy Circuit Court, against John Gray, Reuben Raymond, Christopher C. Massey, Charles Noble, Robert McFarland and Thomas Gray. The declaration charged the tearing down a fence of plaintiff, and destroying his corn and other growing grain. A number of pleas were filed and issues were formed.

The case was removed by change of venue to Kendall county, where a trial was had resulting in a verdict against the defendants, from which this appeal is prosecuted.

Mr. CHARLES WHEATON, for the appellants.

Mr. OLIVER C. GRAY, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of trespass *quare clausum fregit* brought by appellee against appellants. The general issue was filed by all of the defendants; and all, except Gray, filed a plea of justification, that the place where the fence stood, and from which it was removed, was a public highway, and defendants, as a part of the traveling public, having occasion to use the road, removed the fences as they lawfully might. A replication was filed traversing the averment that the place where the fence stood was a public road.

The cause was tried at the special May Term, 1865, of the court, by a jury, who found the issues for the plaintiff below, and assessed his damages at $883.12. A motion for a new trial was overruled and judgment rendered on the verdict. And the case is brought to this court by appeal to reverse the judgment.

This entire contest depends on the precise place where a public road was located; and the difficulty grows out of the difference in the various surveys made for the purpose of ascertaining where the road was, in fact, originally located by those appointed for the purpose. The plat of the road calls for the southwest corner of section twenty. According to some of the surveys the corner was supposed to be at one place, while by others it was located at another. Witnesses called to establish the corner differed equally with the surveyors as to their recollection of the place. According to the evidence offered by one set of surveys and witnesses, the fence was in the road, and by the other, it was not, all depending upon the true location of this corner. But in this conflict in the testimony, it is for the jury to weigh the evidence, and, as far as possible, reconcile it and give to it such weight as it deserved.

It is urged as a ground of reversal, that the court below erred in refusing to admit a copy of a survey and plat of the road made by Harvey, who had relocated it. The copy was certified by the town-clerk, and the original purported to have been returned and to have been on file in his office. Had the original been offered there could have been no doubt of its admissibility as evidence. It bears date on the 16th of July, 1857, and he was then the county surveyor of Grundy county.

The sixth section of article nine of the township organization law (Haines' Comp. 45) declares, that copies of all papers duly filed in the office of the town-clerk, and transcripts from the book of record certified by him, shall be evidence in all courts, in like manner as if the originals were produced. This section, however, only applies to papers which the law has required to be filed and preserved as a matter of record by the town-clerk. The clerk is not required to file the minutes of a resurvey of

a road, unless the survey was made under the authority of the board of supervisors or the commissioners of highways, and their power to have roads resurveyed was conferred by the act of 1861 (Sess. Laws, 130). And the power was limited to roads previously located and established. This survey was made in 1857, before the passage of this act, and the minutes could not become a matter of record in the town-clerk's office, and consequently a copy was not admissible. If the copy had been from the surveyor's books, it would have been otherwise, as the law regulating surveys declares such copies to be evidence. The same is true of the certified copy of the notes and plat of a survey made by Harvey in 1860, except that he was not county surveyor at the time it was made. The county authorities and road commissioners are only authorized to employ the county surveyor to resurvey a public road. Not being county surveyor at the time, neither the original nor a copy of this survey could be evidence. There was no error in rejecting these certificates when they were offered.

It is again insisted, that the court below erred in refusing to admit in evidence a certified copy of a portion of the proceedings of a meeting of the town in which the road was located. It was a resolution adopted in April, previous to the removal of the fence, and required it to be removed by the commissioners of highways. In connection with the resolution, Gray offered to prove that he was present and voted against the resolution, and urged, that suit should be brought for obstructing the road. This would not be evidence to justify an illegal act. And, while such evidence would not justify a trespass, it would tend to repel the presumption of malice on the part of the defendants. Appellee claimed, that appellants were actuated by such feelings, and the court instructed the jury, that, if they acted in bad faith and with malice in removing the fence, they would be justified in awarding damages as a punishment to appellants. And, as this evidence tended to repel malice, it should be admitted to rebut the presumption, and in mitigation of exemplary damages. And, for the same reason, Thompson's evidence that Gray always opposed the removal of the fence,

should have been admitted.    In rejecting this evidence, the court below erred.

It is also insisted, that the court below erred in permitting the witnesses to testify to the subsequent removal of the fence, in February, 1860, when only a part of appellants were present and participated in what was then done.    And it appears that Gray was not then present.    In answer to this objection, it is said, that appellee did not go into an inquiry of the damages he sustained by that trespass.    It is true, that the question was not asked of the witness, but the jury had the basis already in the testimony from which to make a calculation.    The witnesses for appellee stated, that the fence built to replace the former was removed by a part of the defendants the next winter.    He proved the length of the fence that had been removed in the summer, and how much it would cost to rebuild it.    And, as this fence last removed was of the same length, the jury could readily compute the amount of damages appellee sustained thereby.    And, as this evidence was admitted, the jury, no doubt, considered it in finding their verdict.    The court below, therefore, erred in admitting this evidence.

It is likewise insisted, that appellee was only entitled to recover for the cost of repairing his fence, and was not entitled to recover for damages done to his crops growing at the time in the field thus thrown open.    In the case of *Buckmaster* v. *Cool*, 12 Ill. 74, which was an action of trespass *quare clausum fregit*, where it appeared that several persons, who had raised crops in the same field inclosed by a defective fence, and one of them erected an inside fence to protect his crops, and in September, plaintiff purchased eighteen acres of the corn in the field, and defendants removed a part of the inside fence, by means of which, stock entered the field and destroyed the corn, the court say, that, "If the fence was removed by the direction of the defendant, he was responsible for all of the consequences directly resulting from the act."    We regard the rule announced in that case as governing this.    If appellants wrongfully removed this fence, and the destruction of the

crops was the direct result, they were liable for the damages to the crops.

For the errors indicated in this opinion, the judgment of the court below must be reversed, and the cause remanded for a new trial, not inconsistent with this opinion.

*Judgment reversed.*