[No. 4421.]

BROWN ET AL. V. KEEGAN.

1. **Appellate Practice—Transcript—Amendment — Filing — Parties.**

Where certain defendants in error were made plaintiffs in error and an amended or additional transcript was lodged with the clerk of the appellate court, but by oversight the clerk failed to place any file marks thereon or to note its filing on the docket, and plaintiffs in error filed a printed abstract of record which was based partly upon and frequently referred to said amended transcript so that defendant in error must have known of its existence, and the only objection made to said amended transcript prior to oral argument was a statement in the brief of defendant in error that the parties who had been changed from defendants to plaintiffs in error had filed no transcript, an objection urged on oral argument to said amended transcript on the ground that it had not been filed is not sufficient to exclude it, and it will be ordered filed nunc pro tunc.

2. **Appellate Practice—Parties—Writs of Error—Waiver.**

Where, after suing out a writ of error, certain parties named as defendants in error were upon motion made plaintiffs in error, the remaining defendant in error by joining in error waived the suing out of a writ of error by the new plaintiffs in error.

3. **Principal and Agent—Sales—Commission.**

The compensation of an agent to sell real estate is contingent upon his procuring a purchaser ready, able and willing to purchase the property substantially upon the terms under which it had been placed in his hands for sale, and before he can enforce his contract for commission it is necessary for him to prove that he has performed his part of the engagement.

4. **Principal and Agent—Commission—Sales—Options.**

A broker employed for a stipulated compensation to sell property for a certain sum to be paid at certain stated periods, does not effect a sale entitling him to such compensation by procuring a proposed purchaser who enters into a contract with the owner by the terms of which the payment of part of the pur-

chase price and the completion of the purchase is optional with the purchaser.

*Error to the District Court of Lake County.*

Messrs. TALBOT, DENISON & WADLEY, for plaintiffs in error.

Mr. CHAS. D. HAYT, Mr. T. B. STUART and Mr. CHAS. A. MURRAY, for defendant in error.

CHIEF JUSTICE GABBERT delivered the opinion of the court.

This action was originally brought in this court by The Gordon-Tiger Mining & Reduction Company, and entitled: "The Gordon-Tiger Mining & Reduction Company, Plaintiff in Error, v. John T. Keegan et al., Defendants in Error." Thereafter the death of S. P. Brown, one of the defendants in error, was suggested, and motion made that his administrator be substituted in his stead, and that such administrator, as well as the other defendants in error, except Keegan, be permitted to be made plaintiffs in error. The motion substituting the administrator in place of the deceased, and to allow him to be made a plaintiff in error, was sustained, but no order seems to have been entered permitting the others to be made plaintiffs in error, as requested in the motion. Subsequently the parties filing this motion filed an abstract of record based in part upon a transcript of record other than that originally lodged by the Gordon-Tiger company. By this abstract those who had been designated defendants in error, except Keegan, were named as plaintiffs in error, except that the administrator was substituted in place of S. P. Brown, deceased. This abstract also contained what purported to be a copy of the assignment of errors on the part of those then appearing as additional

plaintiffs in error. It also referred repeatedly to a "second transcript" upon which they relied in part to support the errors so assigned. At the oral argument counsel for defendant in error, Keegan, called attention to the fact that this transcript did not bear the filing mark of the clerk; that no assignment of errors had ever been filed except by the Gordon-Tiger company, and that the record upon which the other plaintiffs in error relied had never been certified by the clerk of the trial court. The plaintiffs in error other than the Gordon-Tiger company then moved for an order, directing the clerk of this court to mark their transcript filed as of the date their abstract of record was filed. This motion is resisted by the defendant in error, Keegan, because, it is said, that the motion comes too late; that the record has never been certified properly; that the plaintiffs in error have been guilty of laches, and that to now allow this record to be filed would work a great hardship upon him. In support of this motion it is urged that no new writ of error was sued out by the plaintiffs in error, and that the writ sued out by the original plaintiff in error, the Gordon-Tiger company, only brought here for review the judgment rendered against that company in its capacity as garnishee, and therefore only the proceedings which led up to the judgment against the garnishee can be reviewed.

From affidavits and other facts called to our attention in support of the motion for leave to file the supplemental or amended transcript, we are convinced that it was, in fact, lodged with the clerk of this court not later than the date the plaintiffs in error filed their printed abstract of record and assignment of errors, and that through some oversight the clerk neglected to mark the same filed, or note the filing on the docket. It has been in the office of the clerk ever since that date. The abstract of

record above referred to, referred to this transcript. From this source it must have been known to counsel for defendant in error that the plaintiffs in error relied upon this transcript, and considered it as having been properly filed. The defendant in error has joined in error as against those who subsequently appeared as additional plaintiffs in error, and the only objection urged by him until the time of the oral argument as to the non-filing of this transcript appears in his brief, where it is stated, substantially, that the records do not disclose that these plaintiffs in error ever filed any transcript or assignment of errors, and that the bill of exceptions upon which their abstract is for the most part founded was signed at the instance of the Gordon-Tiger company. In view of the fact that the amended transcript was actually lodged with the clerk at that time, and that counsel for defendant in error must have been cognizant of this fact, the objection thus urged was not sufficient, neither did it raise any question as to the certification of the transcript. By joining in error, the defendant in error has waived the suing out of a writ of error by the new plaintiffs in error. In looking through the additional transcript, we find an assignment of errors signed by counsel; and from appearances, written at or about the time when the transcript itself was lodged with the clerk. The motion of plaintiffs in error to have their transcript of record and assignment of error marked filed, and noted upon the docket as of the date the abstract of record was filed, is sustained.

Defendant in error brought an action against the plaintiffs in error, except the Gordon-Tiger company and the administrator of the deceased, S. P. Brown, to recover brokerage commission. He supplemented this action by suing out an attachment under which The Gordon-Tiger Mining & Reduction Com-

pany was garnisheed. In his complaint he charged
substantially that the defendants employed him to
procure a purchaser for their certain mining prop-
erty, and agreed and promised, if he would procure
a purchaser therefor, to pay him the sum of $25,000;
that pursuant to this agreement he did procure a pur-
chaser to whom the property was sold by the defend-
ants. The issues joined were found in favor of the
plaintiff and judgment rendered in the sum of. $25,-
000 and interest against the defendants. The court
further found that the Gordon-Tiger company was
indebted to the defendants in something like ten thou-
sand dollars, and rendered judgment against it in
the garnishment proceedings in favor of plaintiff.

Plaintiff testified that the property had been
placed in his hands for sale at the price of $250,000;
$75,000 of which was to be paid in cash, and the
remainder in installments at certain fixed periods.
Out of the first payment he was to receive his com-
mission of $25,000. He procured one Daniel C. Mur-
phy, with whom S. P. Brown entered into a contract,
which provided that Brown was to convey the prop-
erty to Murphy, or such corporation as he might des-
ignate, upon the following terms: Murphy, or the cor-
poration, by a date designated, was to discharge cer-
tain liens against the property, approximating the
sum of $60,000, the remainder of that sum, if any,
after the liens were discharged, to be paid over to
Brown. Possession of the property was to vest in
Murphy or the corporation. From the operation of
this property a certain percentage of the profits was
to be paid Brown until the sum thus paid, in connec-
tion with the $60,000, equalled $200,000. When this
sum was thus paid, conveyances were to be delivered.
It was also provided that if Murphy or the corpora-
tion, after working the property, should determine
that it could not be operated at a profit, then the prop-

erty might be surrendered back to Brown, in which event the contract should be void, and neither Murphy nor his assigns liable for damages; but the moneys paid and all machinery, betterments, and improvements added to the property should be forfeited to Brown as fixed and liquidated damages. Under this agreement deeds were to be placed in escrow, to be delivered when payment for the property was completed. Conveyances seem to have been made subsequently, for the purpose of simplifying the transfer of the title, but the obligations as assumed by the respective parties were not changed. The property was never paid for, and Murphy or the corporation only advanced about the sum of $50,000 in the way of discharging liens against the property.

According to his complaint, the plaintiff was to effect a sale of the property. According to his testimony, he was authorized to sell the property for the sum of $250,000; $75,000 of which was to be in cash, and the remainder at stated periods. Upon such sale being effected, he was to have a commission of $25,000. The agreement entered into between the owner and Murphy was not a sale of the property on the terms and conditions either stated in the complaint or by the plaintiff in his testimony. There was no sale. The agreement between Brown and Murphy, upon which the plaintiff relies to recover his compensation, provided that on the payment of $200,000 in the manner therein specified, the title should be conveyed to Murphy or such corporation as he might designate. Whether the proposed purchaser was bound to pay the $60,000, or any part thereof, is immaterial; for it is clear that as to the remainder of the purchase price, namely, the sum of $140,000, the payment was not only entirely optional on the part of Murphy or the corporation, but contingent upon its being produced in the way of profits through the

operation of the property. By exercising this option the proposed purchaser is entirely relieved from the payment of such part of the purchase price as then remained unpaid. The compensation of plaintiff, according to his own statement, was contingent upon his securing a purchaser ready, able and willing to purchase the property substantially upon the terms under which it had been placed in his hands for sale. It was necessary for him to prove that he performed his part of the engagement before he can enforce his contract. This he has failed to do, because the contract entered into between Brown and Murphy is not a sale, for the reason that neither Murphy nor the corporation engaged unconditionally to pay the purchase price; and besides, the payment of the $140,000 is wholly contingent. A broker employed for a stipulated compensation to sell property does not effect a sale entitling him to such compensation by procuring a proposed purchaser who enters into a contract with the owner by the terms of which the payment of part of the purchase price is optional with the vendee, or contingent.—*Zeidler v. Walker*, 41 Mo. App. 118; *Dwyer v. Raborn*, 6 Wash. 213; *Aigler v. Carpenter Land Co.*, 51 Kan. 718; *Lawrence v. Rhodes*, 58 N. E. (Ill.) 910.

The judgment against the original defendants is clearly erroneous, and it follows, of course, that judgment should not have been entered against the garnishee. The judgment of the district court as to the defendants and the garnishee is reversed, and the cause remanded for a new trial.

*Judgment reversed.*