[No. 5453.]
[No. 3123 C. A.]

INNES v. BOGAN, GAINES & COMPANY.

Brokers — Real Property — Commission — Purchaser Ready and
    Willing to Buy.

An owner agreed to give a broker 10 per cent. commission
for selling certain lands, the price and terms to be made by the
former. The latter brought E. to the owner, but, upon being
told the price, E. left without offering to buy. The owner later
sold to S. who, in turn, sold to E. Held that, in the absence of
any showing of collusion between the owner and S., the broker
is not entitled to such commission, since he did not furnish a
purchaser who was ready, able and willing to buy on the terms
of the owner.—P. 11.

*Appeal from the District Court of Mesa County.*
*Hon. Theron Stevens, Judge.*

Action by Bogan, Gaines & Company, a copart-
nership, against Joseph Innes. From a judgment
for plaintiffs, defendant appeals.          *Reversed.*

Mr. S. N. WHEELER, for appellant.

Messrs. CARNAHAN & VAN HOOREBEKE, for appel-
lees.

Mr. JUSTICE BAILEY delivered the opinion of the
court:

The defendant entered into the following agree-
ment with plaintiffs:

"I hereby agree to pay Bogan, Gaines & Co.,
real estate dealers of Grand Junction, Colorado, a
commission of ten per cent. if they furnish me a pur-
chaser for my one hundred and sixty acres, located
two and one-half miles east of Fruita. The term
'furnish a purchaser' shall include all parties whom
they refer to me, either through introduction or other-
wise or to whom they show my property.   The selling

price and terms shall be named by me and I agree to pay said commission out of the first payment made by their purchaser.

(Signed)                    Owner, JOSEPH INNES."

Plaintiffs instituted this action upon the contract, alleging that the defendant named as the selling price for the land the sum of five thousand dollars and that they found a purchaser, one William Eppert, who was ready, willing and able to purchase the land at the price named by the defendant. The plaintiffs produced two witnesses, the first being Eppert, the prospective purchaser, who testified, so far as the making of the contract was concerned, as follows:

"We met Mr. Innes according to the agreement, in Grand Junction, at Mr. Gaines' office. Mr. Gaines was present. We went into the office and I asked Mr. Innes what he would take for the land, what was his best price. He said $4,750.00 net to him. We did not do anything about it. We got his price and left. I was willing to pay $5,000.00 for the property."

Upon cross-examination he said that he never told Innes that he was, willing to buy the place on those terms, and that he never authorized the plaintiffs to make any proposition upon the place whatever.

The testimony of Gaines, one of the plaintiffs, so far as it related to the price of the property as named by Innes was as follows:

"I met Innes on the street and told him that Eppert was ready to buy the place at $5,000.00. Mr. Innes came into the office and went back into the room where Mr. Eppert was and I sat down on the south side of the desk and Mr. Innes near the door, and I said, 'Now Mr. Eppert is ready to buy that

place and would like to know your best price.' He says, 'I want $4,750.00 net to me.' There wasn't very much said. Innes got up and left the room.''.

Upon cross-examination Gaines testified that the only price that Innes fixed was in the office, at $4,750.00 net to him, and that Eppert did not say that he would take the place at that price; that the witness informed Innes that Eppert would take it at $5,000.00.

In addition to this, the proof shows that very shortly after the conversation in the office of the plaintiffs, defendant sold the property to a man named Sharp, who subsequently sold it to Eppert, the consideration named in the deed from defendant to Sharp being $5,000.00.

At the close of plaintiff's testimony defendant moved that the jury be instructed to return a verdict for the defendant. This motion was overruled, but it should have been granted. Under the terms of the contract the defendant had the right to name the price for which the land was to be sold. The only price that he named was $4,750.00 net to him and the proposed purchaser was not willing to take it at that price. There is nothing in the contract prohibiting the defendant from selling the property himself. There is no testimony showing any collusion or fraud between Sharp and the defendant. Before the plaintiffs could be entitled to a judgment it was necessary for them to furnish a purchaser who was ready, able and willing to buy on the terms of the seller. Having failed to do that, the court should have directed a verdict.

The following authorities support the foregoing proposition: Meacham on Agency 967; *Wiley v. Marine Nat'l Bank*, 61 N. Y. 416; *Hannahan v. Ulrich*, 107 Ill. App. 626; *Kilhan v. Wilson*, 112 Fed. 565; *Brown v. Keegan*, 32 Colo. 463; *Colburn v. Seymour*,

32 Colo. 430, and many authorities cited in the fore-going.

For the reasons above stated the judgment of the district court will be reversed.        *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE. GODDARD concur.